1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   STANLEY P. BERMAN,

11            Plaintiff,                 No. 2:11-cv-000635 MCE KJN PS

12       v.

13   JULIE A. MCMANUS, LEANE RENEE,
     MARY HENZIE, LESLIE SCOTT,
14   CAROLINE SHELLER, CHUCK
     ECKERMAN, GEORGE A. ROBERTS
15   and DOES 1-10,

16            Defendants.              ORDER and FINDINGS AND
                                       RECOMMENDATIONS
17   _____/

18            Presently before the court[1] are the following motions: (1) defendants Leslie Scott

19   and Caroline Sheller's motion to dismiss plaintiff's claims against them pursuant to Federal Rule

20   of Civil Procedure 12(b)(6) (Dkt. No. 7); (2) defendant Leane Renee's motion to dismiss and/or

21   specially strike plaintiff's claims against her pursuant to Federal Rule of Civil Procedure 12(b)(6)

22

23   _____

24        [1]  This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).  Although plaintiff is proceeding without counsel,
25   documents filed with the court by plaintiff indicate that plaintiff is an attorney.  (See, e.g., Proof of
     Service, Mar. 25, 2011, Dkt. No. 4.)  During the May 19, 2011 hearing on the pending motions,
26   plaintiff confirmed that he is a practicing attorney and member of the California bar.

1

1  and California's anti-SLAPP[2] statute, Cal. Civ. Proc. Code § 425.16 (Dkt. No. 12); (3) defendant

2  Honorable Julie A. McManus' ("Judge McManus") motion to dismiss plaintiff's claims against

3  her pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. No. 15); and (4)

4  defendant George A. Roberts's motion to dismiss and/or specially strike plaintiff's claims against

5  him pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and California's anti-

6  SLAPP statute (Dkt. No. 9).[3]

7         The court heard these motions on its law and motion calendar on May 19, 2011.

8  (Dkt. No. 31.)  Attorneys Carl Fessenden and Katherine L.M. Mola appeared on behalf of

9  defendants Scott and Sheller.  Attorney Jeffrey J.A. Hinrichsen appeared on behalf of defendant

10 Renee.  Deputy Attorney General Kevin W. Reager appeared on behalf of Judge McManus.

11 Attorney Joseph F. Zellmer, III appeared on behalf of defendant Roberts.  Plaintiff, who is an

12 attorney, appeared on his own behalf.

13        The undersigned has considered the briefs, oral arguments, and the appropriate

14 portions of the record in this case and, for the reasons stated below, recommends that: (1) Scott

15 and Sheller's motion to dismiss be granted in part and that all claims against Scott and Sheller be

16 dismissed with prejudice; (2) Renee's motion to dismiss and anti-SLAPP motion be granted in

17 part and that all claims against Renee be dismissed with prejudice; (3) Judge McManus's motion

18 to dismiss be granted in part and that the court either abstain from hearing plaintiff's claims

19 against Judge McManus or, alternatively, dismiss those claims with prejudice; and (4) Roberts'

20 motion to dismiss be granted in part, and that the court decline to exercise supplemental

21 jurisdiction over plaintiff's claims against Roberts.

22

23        [2]  The acronym "SLAPP" stands for "strategic lawsuit against public participation."  Jarrow

24 Formulas, Inc. v. La Marche, 31 Cal. 4th 728, 732 n.1, 74 P.3d 737, 739 n.1 (2003).

25        [3]  The two other defendants named in this action are defendant Mary Henzie and defendant
   Chuck Eckerman, who is Henzie's attorney.  Henzie filed an answer to the complaint.  (Verified

26 Answer, Dkt. No. 18; see also Order, May 10, 2011, Dkt. No. 27.)  The docket does not reflect
   whether plaintiff has served Eckerman with the summons and complaint.

1    Additionally, the undersigned addresses plaintiff's fourth claim for relief, which

2    alleges that defendant Mary Henzie violated plaintiff's constitutional rights.  The undersigned is

3    inclined to dismiss any such constitutional claim, and in this order provides plaintiff with notice

4    of the court's intent to recommend the dismissal of plaintiff's fourth claim and an opportunity to

5    file a written opposition to such *sua sponte* dismissal.

6    I.    BACKGROUND

7    Plaintiff filed his verified complaint on March 8, 2011.  (Compl., Dkt. No. 1.)

8    Plaintiff alleges that this court has subject matter jurisdiction over his claims pursuant to

9    28 U.S.C. §§ 1331, 1332, and 1343.  (Id. ¶ 1.)

10    Underlying this action is what can be fairly characterized as contentious divorce

11    and custody proceedings in the Nevada County Superior Court ("Superior Court").  Plaintiff

12    alleges that he is a resident of Nevada City, California, who at all relevant times had joint legal

13    custody of his two biological, minor children, ages ten and eleven, with defendant Mary Henzie,

14    who is plaintiff's ex-wife and the children's biological mother.  (Compl. ¶¶ 1, 7, 8, 9.)

15    Implicated by some of plaintiff's claims is a recommendation allegedly made in the custody

16    proceedings by "Dr. Eugene Roeder, PhD, a non-party and the duly appointed Parenting Plan

17    Coordinator."  (See id. ¶ 7.)  Plaintiff alleges that on or about January 8, 2010, Dr. Roeder, who

18    had served as the appointed Parenting Plan Coordinator for eight months, "recommended to the

19    court that plaintiff be given 50% physical custody of the minor children as a therapeutic remedy

20    for Parental Alienation Syndrome also referred to as Reluctance/Refusal To Visit, all of which

21    symptoms and diagnostic indicators were exhibited by the minor children."  (Id.)

22    Relevant here, plaintiff alleges claims against the following individuals: (1) Judge

23    McManus, who is alleged to be a judge of the Superior Court and was assigned to the custody

24    action underlying this case in or around January 2010 (see Compl. ¶¶ 4, 10); (2) Leslie Scott,

25    who is alleged to be a supervisor with Nevada County Child Protective Services ("Nevada

26    County CPS") (id. ¶ 15); (3) Caroline Sheller, who is alleged to be the social worker assigned to

3

1    the Superior Court custody case at issue here (id.); (4) Leane Renee, who is alleged to be an

2    attorney that was appointed in May 2008 as counsel for the two minor children at issue in the

3    Superior Court proceedings (id. ¶ 11); (5) Mary Henzie, who is plaintiff's ex-wife and the

4    children's mother; and (6) George A. Roberts, an attorney with whom plaintiff engaged in a

5    physical altercation and who is alleged to have acted as a "consultant" to Henzie's attorney in

6    connection with the plaintiff and Henzie's family law action (see id. ¶¶ 20-22).  Because of the

7    nature of plaintiff's claims and the manner in which they are pled, the following recounting of

8    the allegations in plaintiff's complaint proceeds claim-by-claim, rather than in a strict,

9    chronological manner.

10          A.      Plaintiff's First Claim for Relief

11          Plaintiff's first claim for relief, brought pursuant to 42 U.S.C. § 1983, alleges that

12   Judge McManus violated plaintiff's "rights to substantive due process and a familial relationship

13   with his daughters," which are provided by the Due Process Clauses of the Fifth and Fourteenth

14   Amendments to the United States Constitution.  (See Compl. ¶ 12.)  This claim is alleged only

15   against Judge McManus, who plaintiff has sued in her "individual and personal capacity" and

16   who plaintiff alleges "acted in her individual capacity and outside the scope and color of any

17   legal authority."[4]  (Id. ¶¶ 4, 12-13.)  In connection with this claim, plaintiff seeks monetary

18   damages "in excess of $1,000,000.00," punitive damages, and declaratory relief "adjudging" that

19   Judge McManus violated plaintiff's civil rights.  (Id. ¶ 13; see also id. at p. 15.)

20          Specifically, plaintiff alleges that on October 18, 2010, Judge McManus

21   "orchestrated a sham proceeding" in the family court that ultimately deprived plaintiff of contact

22   with his daughters for an extended period of time.  (See Compl. ¶¶ 12-13.)  Plaintiff alleges that

23   Judge McManus announced at the October 18, 2010 hearing that she was removing the children

24

25          [4]  In paragraph 10 of his complaint, plaintiff makes multiple *ad hominem* attacks on Judge
     McManus.  (See Compl. ¶ 4.)  Because these allegations are not material to the resolution of the
26   pending motions, they are not repeated here.

4

1   from the custody of both parents and ordered that plaintiff and Henzie meet with two Nevada

2   County CPS social workers to discuss the potential placement of the children with friends or

3   relatives instead of in foster care.  (Id. ¶ 13.)  Plaintiff alleges that after the meetings, Judge

4   McManus ordered that the children be placed in foster care, but that the children were never

5   placed in foster care.  (Id.)  He alleges that Judge McManus denied ever making such an order.

6   (Id.)  Plaintiff alleges that as a direct result of the "sham" proceeding, plaintiff "has been allowed

7   absolutely no contact with the minor children to date, a period now approaching five months."

8   (Id.)

9          Additionally, plaintiff alleges that at the October 18, 2010 hearing, Judge

10   McManus informed Henzie's attorney that Henzie would be provided with an attorney qualified

11   to act in dependency actions upon request.  (Id.)  Plaintiff alleges that he requested such counsel

12   at that time.  (Id.)  He alleges that Judge McManus "de facto" terminated his parental rights

13   without due process and without affording him "assistance of counsel coincident to a California

14   Welfare and Institutions Code Section 300 et. seq. dependency action and thereby acted outside

15   and contrary to the scope of her official capacity in depriving him of his constitutional rights."[5]

16   (Id.)

17          Plaintiff also alleges a lengthy list of additional acts by Judge McManus that were

18   "contrary to and outside the scope of her authority as a family court judge making her subject to

19   personal liability in this action":

20          [1] destroying evidence of an email communication by plaintiff, [2] lying
           in denying several statements in the family law case, [3] using intimidation
21          tactics and threats of sanctions and incarceration, [4] communicating
           outside of court hearings in her individual capacity ex parte with CPS and
22          minors' counsel to orchestrate deprivation of plaintiff's familial rights
           regarding his minor daughters, [5] signing orders submitted by the parties
23          that contain terms not addressed in any proceedings before the court and/or

24

25          [5] California Welfare and Institutions Code § 317 provides for the appointment of counsel
       for a parent or guardian in dependency actions "[w]hen it appears to the court that a parent or
26       guardian of the child desires counsel but is presently financially unable to afford and cannot for that
       reason employ counsel."  See Cal. Welf. & Inst. Code § 317(a)(1).

                                                  5

1    failing to completely read orders that she eventually signed.

2    (Compl. ¶ 13.)

3         B.    Plaintiff's Second Claim for Relief

4              Plaintiff's second claim for relief, brought pursuant to 42 U.S.C. § 1983, is

5    alleged only against Leslie Scott, a Nevada County CPS supervisor, and Caroline Sheller, a

6    Nevada County CPS social worker.  (See Compl. ¶¶ 14-15.)  Plaintiff alleges that Scott and

7    Sheller violated plaintiff's "rights to substantive due process and a familial relationship with his

8    daughters" provided by the Fifth and Fourteenth Amendments.  (Id. ¶ 14.)  He seeks monetary

9    damages "in excess of $500,000.00 per defendant" and declaratory relief "adjudging" that Scott

10   and Sheller violated plaintiff's civil rights.  (Id.; see also id. at p. 15.)

11             Specifically, plaintiff alleges that beginning on December 5, 2010, he informed

12   Scott that "he wanted to exercise his rights to visit his minor daughters the maximum amount of

13   times as soon as possible."  (Compl. ¶ 15.)  He alleges that although Scott informed plaintiff that

14   Sheller would arrange visits, he has been "stonewalled" by Sheller and "afforded absolutely no

15   contact with his minor daughters."  (Id.)

16             Plaintiff further alleges that his "requests to learn the identity of the therapist

17   ostensibly assigned to reunite plaintiff with his daughters have been ignored," and that "[n]o

18   information of any kind has been provided plaintiff regarding his daughters."  (Compl. ¶ 15.)

19   Plaintiff alleges that Sheller has stated to him that "she is taking directions from the court," but

20   has refused to answer any of his inquiries.  (Id.)  He also alleges that plaintiff has not been

21   "informed of any properly noticed court proceedings regarding the minor children subsequent to

22   December 1, 2010."  (Id.)

23        C.    Plaintiff's Third, Fifth, and Sixth Claims for Relief

24             Plaintiff's third, fifth, and sixth claims for relief are only alleged against Leane

25   Renee, who was appointed by the Superior Court as minors' counsel in May 2008.  (See Compl.

26   ¶¶ 16, 18-19.)  Plaintiff's third claim alleges that Renee "committed fraudulent actions in order to

6

deprive plaintiff of his constitutional rights to a familial relationship with his daughters."  (Id.

¶ 16.)  Plaintiff specifically alleges that Renee effectuated this violation through the following

eleven acts:

> [1] misrepresenting to Judge Thomas Anderson in August 2008 that she
> was entitled to seek abridgment of plaintiff's parenting time ex parte
> without notice to plaintiff, [2] misrepresenting to the court that there
> existed a restraining order against plaintiff, [3] misrepresenting to the
> court that she was attending a conference on the day she had been ordered
> to appear for hearing on Dr. Roeder's recommendation in January 2010,
> [4] misrepresenting to the court that the order of the court regarding
> parenting time did not conform to the terms ordered in open court,
> [5] misrepresenting to the minor children that the parenting plan order
> signed by the court was not accurate, [6] falsely denying to the court that
> she stated that Dr. Dugan[6] would testify about the role of a parenting plan
> coordinator, [7] misrepresenting to the court that the minor children had
> made declarations submitted in support of a restraining order,
> [8] misrepresenting to the court plaintiff's actions by editing documents
> provided to the court in a clearly misleading fashion, [9] falsely denying to
> the court that she had been engaged to appeal a termination of parental
> rights by a client that subsequently contacted plaintiff, [10] inserting terms
> limiting plaintiff's contact with his daughters into a proposed order that
> were not addressed in the underlying hearing, [11] and amassing a billing
> and being paid by the [Superior Court] over $50,000 at $70 per hour for
> work on the case that was many times more than was warranted by the
> circumstances of the case.

(Compl. ¶ 16.)  Although not part of plaintiff's express claims against Renee, plaintiff also

alleges that Renee "attempted to prohibit testimony by Dr. Roeder on parental alienation citing

the National Organization of Women party line that Parental Alienation cannot be recognized in

court as it is not yet listed in the DSM-IV."[7]  (Id. ¶ 11.)  Plaintiff seeks monetary damages "in

excess of $1,000,000.00" and declaratory relief "adjudging" that Renee violated plaintiff's civil

rights.  (Id. ¶ 16; see also id. at p. 15.)

Plaintiff's fifth claim for relief alleges that Renee is liable for intentional infliction

---

[6]  Elsewhere in the complaint, plaintiff alleges that "Dr. Dugan" was a "court appointed evaluator incident to a supplemental custody evaluation conducted in March 2009." (Compl. ¶ 17.)

[7]  Plaintiff's reference to the DSM-IV is an apparent reference to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994).

1  of emotional distress, and seeks monetary damages "in excess of $1,000,000.00." (Compl. ¶ 18.)

2  Plaintiff alleges in his fifth claim that "Renee read to [plaintiff's] minor children the statements

3  she submitted and attributed to them that were contained in the pleading filed seeking a

4  restraining order against plaintiff." (Id.)

5         Plaintiff's sixth claim for relief alleges that Renee is liable for negligent infliction

6  of emotional distress, and seeks monetary damages "in excess of $1,000,000.00." (Compl. ¶ 19.)

7  As with plaintiff's fifth claim, plaintiff's sixth claim alleges that "Renee read to [plaintiff's]

8  minor children the statements she submitted and attributed to them that were contained in the

9  pleading filed seeking a restraining order against plaintiff." (Id.)

10       D.    Plaintiff's Fourth Claim for Relief

11         Plaintiff's fourth claim, alleged only against Henzie, is for "fraud in depriving

12  plaintiff of his rights to a familial relationship." (Compl. at p. 11.) Specifically, plaintiff alleges

13  that Henzie "fraudulently deprived him of his constitutional right to a familial relationship with

14  his daughters by making false accusations of spousal abuse against plaintiff to his minor

15  daughters and to Dr. Dugan, the court appointed evaluator incident to a supplemental custody

16  evaluation conducted in March 2009." (Id. ¶ 17; see also id. ¶ 9 (alleging "false accusations of

17  spousal abuse leveled by Defendant Mary Henzie").) Plaintiff seeks damages "in excess of

18  $1,000,000.00" and declaratory relief "adjudging" that Henzie violated plaintiff's civil rights.

19  (Id. ¶ 17; see also id. at p. 15.)

20       E.    Plaintiff's Seventh and Eighth Claims for Relief

21         Plaintiff's seventh and eighth claims for relief are alleged only against George A.

22  Roberts. Both claims arise from a physical altercation that allegedly took place between plaintiff

23  and Roberts, which is largely unrelated to the Superior Court custody case. However, plaintiff

24  alleges that Roberts was a "consultant" to Henzie's attorney in the divorce proceedings (Compl.

25  ¶ 22), and judicially noticeable documents discussed below refer to the fact that Roberts testified

26  as an expert witness in plaintiff's and Henzie's family law proceedings.

1    Plaintiff's seventh claim alleges that Roberts assaulted and battered plaintiff and

2    seeks damages "in excess of $50,000.00." (Compl. ¶ 20.)  Plaintiff alleges that "on July 20, 2010

3    Defendant George A. Roberts committed assault and battery against [plaintiff] by striking

4    plaintiff in the face and jumping him and forcefully holding him down for approximately one

5    minute." (Id.)

6    Plaintiff's eighth claim for relief alleges that Roberts slandered plaintiff on two

7    occasions and seeks "in excess of $1,000,000.00" in monetary damages.  (See Compl. ¶ 21.)

8    First, plaintiff alleges that on August 23, 2010, Roberts filed a false declaration in a United States

9    Bankruptcy Court that accused "plaintiff of punching [Roberts] in the area of his pacemaker and

10   thereby injuring him and causing him to seek medical treatment." (Id.)  Second, plaintiff alleges

11   that "Roberts further slandered plaintiff by falsely stating that [plaintiff] punched him to Jeffrey

12   Guyton,[8] Charles Eckerman, and Leane Renee as well as to other persons presently unknown to

13   plaintiff." (Id.)  Plaintiff alleges damage to his reputation and that "the false allegations were

14   used against him in connection with his custody litigation regarding his minor daughters." (Id.)

15         F.    Plaintiff's Ninth Claim for Relief

16   Plaintiff's ninth claim for relief is a claim for "conspiracy to slander" and is

17   alleged against Roberts, Renee, Eckerman, and Henzie. (Compl. ¶ 22.)  Plaintiff seeks "in excess

18   of $1,000,000.00 per defendant." (Id.)  Plaintiff alleges that Roberts "acted as a consultant to

19   Defendant Chuck Eckerman in connection with advising Defendant Eckerman in his capacity as

20   attorney of record for Defendant Henzie in her family law action." (Id.)  Plaintiff alleges that

21   following the July 20, 2010 altercation between plaintiff and Roberts, Roberts falsely informed

22   Eckerman that plaintiff had assaulted and injured him. (Id.)  Plaintiff further alleges that

23   Eckerman "passed the slanderous accusation" to Henzie and Renee, and that Henzie and Renee

24   later "passed the slanderous accusation to Lynette Weiss, the therapist treating the minor children

25

26         [8]   At the hearing, plaintiff represented that Guyton is an attorney who has no official
     connection with the proceedings in the Superior Court that underlie this action.

9

1 | for effects of parental alienation syndrome."  (Id.)

2 | II.      LEGAL STANDARDS

3 |          A.      Motion to Dismiss For Lack of Federal Subject Matter Jurisdiction

4 |                   A motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1)

5 | or 12(h)(3) challenges the court's subject matter jurisdiction.  Federal district courts are courts of

6 | limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of

7 | jurisdiction," and "[a] federal court is presumed to lack jurisdiction in a particular case unless the

8 | contrary affirmatively appears."  A-Z Int'l v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003)

9 | (citations and quotation marks omitted); see also Fed. R. Civ. P. 12(h)(3) ("If the court

10 | determines at any time that it lacks subject matter jurisdiction, the court must dismiss the

11 | action.").  When ruling on a motion to dismiss for lack of subject matter jurisdiction, the court

12 | takes the allegations in the complaint as true.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir.

13 | 2004).  However, the court is not restricted to the face of the pleadings and "may review any

14 | evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of

15 | jurisdiction."  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988), cert. denied, 489

16 | U.S. 1052 (1989); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir.

17 | 2003) ("A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the

18 | pleadings or by presenting extrinsic evidence.").  "When subject matter jurisdiction is challenged

19 | under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in

20 | order to survive the motion."  Tosco Corp. v. Cmtys. for a Better Env't., 236 F.3d 495, 499 (9th

21 | Cir. 2001) (per curiam), abrogated on other grounds by Hertz Corp v. Friend, 130 S. Ct. 1181

22 | (2010); see also Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112, 1121 (9th Cir.

23 | 2009) ("In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit

24 | 'affidavits or any other evidence properly before the court . . . .  It then becomes necessary for the

25 | party opposing the motion to present affidavits or any other evidence necessary to satisfy its

26 | burden of establishing that the court, in fact, possesses subject matter jurisdiction." (citation

1   omitted, modification in original)).

2        B.     <u>Motion to Dismiss For Failure to State A Claim On Which Relief Can Be Granted</u>

3        A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

4   challenges the sufficiency of the pleadings set forth in the complaint.  <u>Vega v. JPMorgan Chase</u>

5   <u>Bank, N.A.</u>, 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

6   of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

7   plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); <u>see</u>

8   <u>also</u> <u>Paulsen v. CNF, Inc.</u>, 559 F.3d 1061, 1071 (9th Cir. 2009), <u>cert. denied</u>, 130 S. Ct. 1053

9   (2010).  "A complaint may survive a motion to dismiss if, taking all well-pleaded factual

10  allegations as true, it contains 'enough facts to state a claim to relief that is plausible on its

11  face.'"  <u>Coto Settlement v. Eisenberg</u>, 593 F.3d 1031, 1034 (9th Cir. 2010) (quoting <u>Ashcroft v.</u>

12  <u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)).  "'A claim has facial plausibility when the plaintiff pleads

13  factual content that allows the court to draw the reasonable inference that the defendant is liable

14  for the misconduct alleged.'"  <u>Caviness v. Horizon Cmty. Learning Ctr., Inc.</u>, 590 F.3d 806, 812

15  (9th Cir. 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1949).  The court accepts all of the facts alleged in

16  the complaint as true and construes them in the light most favorable to the plaintiff.  <u>Corrie v.</u>

17  <u>Caterpillar</u>, 503 F.3d 974, 977 (9th Cir. 2007).  The court is "not, however, required to accept as

18  true conclusory allegations that are contradicted by documents referred to in the complaint, and

19  [the court does] not necessarily assume the truth of legal conclusions merely because they are

20  cast in the form of factual allegations."  <u>Paulsen</u>, 559 F.3d at 1071 (citations and quotation marks

21  omitted).

22       The court must construe a pro se pleading liberally to determine if it states a claim

23  and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give the plaintiff an

24  opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  <u>See</u>

25  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); <u>see also</u> <u>Balistreri v. Pacifica</u>

26  <u>Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990) (stating that "pro se pleadings are liberally

1    construed, particularly where civil rights claims are involved").  In ruling on a motion to dismiss

2    pursuant to Rule 12(b)(6), the court "may generally consider only allegations contained in the

3    pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."

4    Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

5    quotation marks omitted).  Additionally, under the "incorporation by reference" doctrine, a court

6    may also review documents "whose contents are alleged in a complaint and whose authenticity

7    no party questions, but which are not physically attached to the [plaintiff's] pleading."  Knievel

8    v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted and modification in original).[9]

9         C.    Anti-SLAPP Special Motion to Strike, Cal. Civ. Proc. Code § 425.16

10                 Two of the motions before the court have been brought, in part, pursuant to

11   California's anti-SLAPP statute, California Code of Civil Procedure § 425.16.  The Ninth Circuit

12   Court of Appeals has summarized the purpose and general mechanics of California's anti-SLAPP

13   statute as follows:

14              The anti-SLAPP statute establishes a procedure to expose and
             dismiss meritless and harassing claims that seek to chill the exercise of
15           petitioning or free speech rights in connection with a public issue.
             Analysis of an anti-SLAPP motion to strike involves a two-step process.
16           First, the defendant must show that the cause of action arises from any "act
             of that person in furtherance of the person's right of petition or free speech
17           under the United States or California Constitution in connection with a
             public issue. . . ."  Cal. Code Civ.  P. § 425.16(b)(1).
18
             If the court determines that the defendant has met this burden, it
19           must then determine whether the plaintiff has demonstrated a probability
             of prevailing on the merits.  To establish a probability of prevailing, the
20           plaintiff must show that "the complaint is both legally sufficient and
             supported by a sufficient prima facie showing of facts to sustain a
21           favorable judgment if the evidence submitted by the plaintiff is credited."

22   _____

23        [9] Although the court may not consider a memorandum in opposition to a defendant's motion
     to dismiss to determine the propriety of a Rule 12(b)(6) motion, see, e.g., Schneider v. Cal. Dep't
24   of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998), it may consider allegations raised in opposition
     papers in deciding whether to grant leave to amend, see, e.g., Broam v. Bogan, 320 F.3d 1023, 1026
25   n.2 (9th Cir. 2003) ("Facts raised for the first time in plaintiff's opposition papers should be
     considered by the court in determining whether to grant leave to amend or to dismiss the complaint
26   with or without prejudice.") (citing Orion Tire Corp. v. Goodyear Tire & Rubber Co., 268 F.3d 1133,
     1137-38 (9th Cir. 2001)).

                                            12

1   Kearny v. Foley & Lardner, LLP, 590 F.3d 638, 648 (9th Cir. 2009) (footnote and citations

2   omitted); accord Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839-40 (9th Cir. 2001); Jarrow

3   Formulas, Inc., 31 Cal. 4th at 733, 74 P.3d at 740.  "The [anti-SLAPP] statute is to be 'construed

4   broadly.'"  Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 595 (9th Cir. 2010) (citing Cal. Civ.

5   Proc. Code § 425.16(a), Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003)).

6            Generally, a party may bring an anti-SLAPP special motion to strike in federal

7   court.  Thomas v. Fry's Elecs., Inc., 400 F. 3d 1206, 1206 (9th Cir. 2005) (per curiam); Vess, 317

8   F.3d at 1109.  But such a motion has limited reach.  A party may seek to specially strike state law

9   claims brought in federal court on the basis of the court's diversity subject matter jurisdiction and

10  state law claims that are supplemental to federal claims in a federal question jurisdiction matter.

11  See Hilton v. Hallmark Cards, 599 F.3d 894, 900 n.2 (9th Cir. 2010) (stating that "we have long

12  held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to

13  their diversity jurisdiction") (citing United States ex rel. Newsham v. Lockheed Missiles & Space

14  Co., 190 F.3d 963, 970-73 (9th Cir. 1999)); Globetrotter Software, Inc. v. Elan Computer Group,

15  Inc., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) ("[I]t appears that under the Erie analysis set

16  forth in Lockheed the anti-SLAPP statute may be applied to state law claims which, as in this

17  case, are asserted pendent to federal question claims.").  However, a party may not use an anti-

18  SLAPP special motion to strike to seek the dismissal of claims based on federal law, such as

19  claims brought pursuant to 42 U.S.C. § 1983.  See Hilton, 599 F.3d at 901 (stating that "a federal

20  court can only entertain anti-SLAPP special motions to strike in connection with state law

21  claims"); accord Restaino v. Bah (In re Bah), 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) (holding

22  that the anti-SLAPP statute does not apply to federal claims); Summit Media LLC v. City of Los

23  Angeles, 530 F. Supp. 2d 1084, 1094 (C.D. Cal. 2008) ("Several District Courts have determined

24  that the Anti-SLAPP statute does not apply to federal question claims in federal court because

25  such application would frustrate substantive federal rights."); Sonoma Foods, Inc. v. Sonoma

26  Cheese Factory, LLC, 634 F. Supp. 2d 1009, 1016 (N.D. Cal. 2007) (same).

III.      DISCUSSION

      A.      This Court Lacks Diversity Jurisdiction Over Any of Plaintiff's Claims

Plaintiff alleges that this court has subject matter jurisdiction over his claims pursuant to 28 U.S.C. §§ 1331, 1332, and 1343.  (Compl. ¶ 1.)  At the outset, the undersigned makes clear that this court lacks federal subject matter jurisdiction over plaintiff's claims to the extent that plaintiff alleges that diversity jurisdiction, as provided in 28 U.S.C. § 1332, permits the court to hear any of plaintiff's claims.  Briefly stated, a lack of complete diversity among the parties deprives the court of diversity jurisdiction.

Federal district courts have diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and the action is between: "(1) citizens of different States; (2) citizens of a State and citizens or subjects of a foreign state; (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and (4) a foreign state . . . as plaintiff and citizens of a State or of different States."  28 U.S.C. § 1332; see also Geographic Expeditions, Inc. v. Estate of Lhotka, 599 F.3d 1102, 1106 (9th Cir. 2010).  Generally, in an action where subject matter jurisdiction is premised on the diversity statute, there must be complete diversity of the parties, which means that all of the plaintiffs have a different state of citizenship than all of the defendants.  See, e.g., Cook v. AVI Casino Enters., Inc., 548 F.3d 718, 722 (9th Cir. 2008).

Here, plaintiff alleges that he is a resident of California and that all of the defendants named in this action, except for defendant Eckerman, are residents of California.  (Compl. ¶¶ 1, 4.)  He alleges that Eckerman is a resident of Arizona.  (Id.)  Plaintiff's own allegations substantiate that complete diversity of the parties does not exist in this action because plaintiff and most of the defendants are residents of the same state.  Accordingly, this court lacks diversity jurisdiction over any of plaintiff's claims.  As a result, this court's federal subject matter

1  jurisdiction must be premised on 28 U.S.C. §§ 1331, 1343, and 1367(a).[10]

2      B.   The Court Need Not, and Does Not, Convert the Motions to Dismiss and Special
           Motions to Strike Into Motions for Summary Judgment
3

4          One of plaintiff's primary arguments in opposition to the pending motions is that

5  the motions should be or must be converted into motions for summary judgment because the

6  moving defendants rely on matters outside of the pleadings.  Plaintiff contends that because the

7  pending motions should be treated as motions for summary judgment, he should be afforded an

8  opportunity to conduct discovery before the court rules on the motions.

9          The undersigned declines plaintiff's invitation to convert the pending motions into

10 motions for summary judgment.  Because the undersigned relies herein on material that may

11 properly be considered in the context of motions to dismiss pursuant to Federal Rules of Civil

12 Procedure 12(b)(1) and 12(b)(6), the court need not convert any of the pending motions into a

13 motion for summary judgment.

14     C.   Scott's and Sheller's Motion to Dismiss (Claim 2)

15         Only plaintiff's second claim for relief is alleged against Nevada County CPS

16 employees Scott and Sheller.  In short, plaintiff alleges that Scott and Sheller violated plaintiff's

17 "rights to substantive due process and a familial relationship with his daughters" provided by the

18 Fifth and Fourteenth Amendments.  (Compl. ¶ 14.)  Scott and Sheller move to dismiss plaintiff's

19 second claim for relief on the grounds that: (1) plaintiff cannot allege a cognizable Fifth

20 Amendment claim because Scott and Sheller are not federal actors; (2) their alleged failure to

21 assist plaintiff with scheduling visitation with his daughters, or their refusal to facilitate such

22 visitation, does not constitute a violation of plaintiff's Fourteenth Amendment rights; (3) their

23

24         [10] Plaintiff does not expressly allege that supplemental jurisdiction over his state law claims
   exists pursuant to 28 U.S.C. § 1367(a).  (See Compl. ¶ 1.)  However, it is readily apparent that
25 subject matter jurisdiction over plaintiff's state law claims potentially exists by virtue of 28 U.S.C.
   § 1367(a).  As discussed below, Roberts challenges any reliance on supplemental jurisdiction as to
26 the state law claims alleged against him.

1  alleged failure to disclose the identity of plaintiff's daughters' therapist does not constitute a

2  violation of plaintiff's Fourteenth Amendment rights; and (4) they are entitled to absolute quasi-

3  judicial immunity or, alternatively, qualified immunity.

4         1.     <u>Scott's and Sheller's Request for Judicial Notice</u>

5        Along with their motion to dismiss, Scott and Sheller filed a request for judicial

6  notice that asks the court to take judicial notice of a Restraining Order After Hearing (Order of

7  Protection), signed by Judge McManus and filed in Nevada County Superior Court case number

8  FL05612 on December 14, 2010 (the "Order of Protection").  (<u>See</u> Req. for Judicial Notice at 1

9  & Ex. 1.)  The Order of Protection, which expires on December 1, 2015, imposes several

10  restrictions on plaintiff, including a stay-away order that requires plaintiff to stay at least 100

11  yards away from Henzie, the minor children, and the children's dog.  The undersigned grants the

12  request for judicial notice because the court may take judicial notice of filings in state court

13  actions where the state court proceedings have a direct relation to the matters at issue.  <u>See</u>, <u>e.g.</u>,

14  <u>Betker v. U.S. Trust Corp. (In re Heritage Bond Litig.)</u>, 546 F.3d 667, 670 n.1, 673 n.8 (9th Cir.

15  2008) (citing <u>U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244,

16  248 (9th Cir. 1992)); <u>Bias v. Moynihan</u>, 508 F.3d 1212, 1225 (9th Cir. 2007); <u>Cactus Corner,</u>

17  <u>LLC v. U.S. Dep't of Agric.</u>, 346 F. Supp. 2d 1075, 1092 (E.D. Cal. 2004); <u>see also</u> <u>Reyn's Pasta</u>

18  <u>Bella, LLC v. Visa USA, Inc.</u>, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial

19  notice of court filings and other matters of public record.").

20         2.     <u>Plaintiff  Fails To State A Claim For A Violation of the Fifth Amendment</u>

21        Scott and Sheller first argue that plaintiff has not, and cannot, successfully allege

22  that his Fifth Amendment due process rights were violated by them because they are social

23  workers employed by Nevada County CPS, and are thus not federal actors.  Plaintiff offers no

24  substantive opposition to this argument, and Scott and Sheller's argument is well-taken.

25        The Ninth Circuit Court of Appeals has plainly held that "[t]he Due Process

26  Clause of the Fifth Amendment . . . [applies] only to actions of the federal government—not to

1    those of state or local governments."  Lee v. City of L.A., 250 F.3d 668, 687 (9th Cir. 2001); see

2    also Bingue v. Prunchak, 512 F.3d 1169, 1174 (9th Cir. 2008) ("The Fifth Amendment's due

3    process clause only applies to the federal government."); Castillo v. McFadden, 399 F.3d 993,

4    1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from

5    depriving persons of due process, while the Fourteenth Amendment explicitly prohibits

6    deprivations without due process by the several States.").

7           Here, plaintiff's complaint alleges that Scott and Sheller are employed by Nevada

8    County CPS (Compl. ¶¶ 14-15), and plaintiff does not allege that Scott and Sheller are federal

9    actors.  Accordingly, plaintiff's second claim for relief is subject to dismissal for failure to state a

10   claim to the extent that it relies on the Fifth Amendment to substantiate a Section 1983 claim.

11   Nothing in plaintiff's complaint suggests that he can cure this pleading deficiency through

12   amendment, and, therefore, the undersigned recommends that such dismissal be with prejudice.

13           3.    Scott and Sheller Are Not Entitled to Absolute Quasi-Judicial Immunity

14           Scott and Sheller also argue that they are entitled to absolute quasi-judicial

15   immunity from any Section 1983 claim because they were simply acting in conformity with the

16   Order of Protection.  Plaintiff opposes this immunity argument in part, arguing that "[c]learly, if

17   Defendants were relying on the Order attached, there is absolutely nothing therein that prohibits

18   them from revealing the identity of the therapist."  (Pl.'s Opp'n to Scott & Sheller's Mot. to

19   Dismiss at 3.)  The undersigned concludes that Scott and Sheller are not entitled to absolute

20   quasi-judicial immunity.

21           "Parties to section 1983 suits are generally entitled only to immunities that existed

22   at common law."  Beltran v. Santa Clara County, 514 F.3d 906, 908 (9th Cir. 2008) (en banc)

23   (per curiam).  The Ninth Circuit Court of Appeals has held that "[j]udges and those performing

24   judge-like functions are absolutely immune from damage liability for acts performed in their

25   official capacities."  Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986) (en banc).

26   "Absolute immunity is extended to state officials, such as social workers, when they are

                                            17

1    performing quasi-prosecutorial and quasi-judicial functions." Tamas v. Dep't of Social & Health

2    Servs., 630 F.3d 833, 842 (9th Cir. 2010).  "However, social workers are not afforded absolute

3    immunity for their investigatory conduct, discretionary decisions or recommendations."  Id.

4            Scott and Sheller only argue that they are entitled to absolute immunity because

5    plaintiff "seeks to hold [them] liable for actions they took pursuant to the Order of Protection

6    issued by the Nevada County Superior Court."  (Scott & Sheller's Memo. of P. & A. In Supp. of

7    Mot. to Dismiss at 8.)  They contend, relying on Coverdell v. Department of Social & Health

8    Services, 834 F.2d 758 (9th Cir. 1987), that they are immune from plaintiff's Section 1983

9    claims because their actions were performed in execution of the Order of Protection.

10           In Coverdell, the Ninth Circuit Court of Appeals held that a child protective

11   services worker was entitled to absolutely immunity from liability in a civil rights action when

12   she executed a court order by apprehending a newborn child from a hospital where the child and

13   the mother were recuperating, and then placing the child in temporary shelter care.  See

14   Coverdell, 834 F.2d at 765.  The Court of Appeals held that the child protective services worker

15   enjoyed absolute quasi-judicial immunity because the worker's acts were "plainly authorized by

16   the court's order."  Id.

17           Here, nothing in the Order of Protection plainly authorizes the conduct about

18   which plaintiff complains.  First, plaintiff alleges that Scott and Sheller have prevented all

19   contact between plaintiff and his daughters, despite an assurance by Scott that Sheller would

20   arrange visits between plaintiff and the children.  (Compl. ¶ 15.)  The Order of Protection does

21   not authorize the prevention of visits or contact between plaintiff and his daughters; to the

22   contrary, it authorizes supervised visits under specific conditions and permits contact "via email,

23   letters, telephone or messages."  (See Attachment to DV-130, appended to Order of Protection.)

24   Additionally, the Order of Protection does not expressly or impliedly authorize any person or

25   agency to withhold the identity of the children's therapist.  Thus, neither Scott nor Shelley plainly

26   acted pursuant to the Order of Protection in denying plaintiff visitation or other contact with his

children and in withholding the identity of the children's therapist from plaintiff.  Accordingly, the undersigned concludes that <u>Coverdell</u> is distinguishable from this case, and Scott and Shelley are not entitled to absolute quasi-judicial immunity.  If Scott or Sheller are entitled to any form of immunity, it must be qualified immunity.

### 4.   Scott and Sheller Are Entitled to Qualified Immunity

Scott and Sheller further move to dismiss plaintiff's claims against them on the ground that they are entitled to qualified immunity.  They argue that plaintiff failed to allege facts sufficient to establish a claim of deprivation of his familial association rights with his daughters by reason of: (1) Scott and Sheller's interference with plaintiff's visitation rights, and (2) Scott and Sheller's withholding of the children's therapist's identity.  They further argue that even assuming plaintiff has alleged a violation of his substantive due process rights, they are entitled to qualified immunity because the rights at issue were not clearly established at the time of the alleged violations.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  <u>Pearson v. Callahan</u>, 129 S. Ct. 808, 815 (2009) (citing <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).  The United States Supreme Court has stated that "[b]ecause qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'"[11] <u>Id.</u> (modification in original) (citing <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)).  Prior to the Supreme Court's decision in <u>Pearson v. Callahan</u>, "courts considering an official claim of qualified immunity followed the two-step protocol established in <u>Saucier v.</u>

---

[11]   The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation."   <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991); <u>see also</u> <u>Dunn v. Castro</u>, 621 F.3d 1196, 1199 (9th Cir. 2010) (finding it "particularly appropriate" to address qualified immunity at the pleading stage in light of the Supreme Court's guidance that qualified immunity be addressed at as early a stage in the litigation as possible).

1     <u>Katz</u>, 533 U.S. 194 . . . (2001), which required [courts] first to determine whether the defendant

2     violated a constitutional right and then to determine whether that right was clearly established."

3     <u>See</u> <u>James v. Rowlands</u>, 606 F.3d 646, 650-51 (9th Cir. 2010) (citing <u>Pearson</u>, 129 S. Ct. at 818).

4     In <u>Pearson</u>, however, "the Supreme Court reversed this earlier rule and gave courts discretion to

5     grant qualified immunity on the basis of the 'clearly established' prong alone, without deciding

6     in the first instance whether any right had been violated." <u>Id.</u> at 651 (citing <u>Pearson</u>, 129 S. Ct.

7     at 818.)

8           To determine whether a right is clearly established, "the court must determine

9     whether the preexisting law provided the defendants with 'fair warning' that their conduct was

10    unlawful." <u>Dunn</u>, 621 F.3d at 1199-1200 (citation and quotation marks omitted).  The Ninth

11    Circuit Court of Appeals has "stress[ed] that 'the right allegedly violated must be defined at the

12    appropriate level of specificity before a court can determine if it was clearly established.'" <u>Id.</u>

13    at 1201 (citing <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999)).  "Whether the law was clearly

14    established is an objective standard; the defendant's subjective understanding of the

15    constitutionality of his or her conduct is irrelevant." <u>Clairmont v. Sound Mental Health</u>, 632

16    F.3d 1091, 1109 (9th Cir. 2011).  "The plaintiff bears the burden of proving that the rights [he]

17    claims were 'clearly established' at the time of the alleged violation." <u>Robinson v. York</u>, 566

18    F.3d 817, 826 (9th Cir. 2009) (citation and quotation marks omitted; modification in original).

19    And although the "contours of the right must be sufficiently clear that a reasonable official would

20    understand that what he is doing violates that right, . . . closely analogous preexisting case law is

21    not required to show that a right was clearly established." <u>Id.</u> (citations and quotation marks

22    omitted).

23          "The Fourteenth Amendment's Due Process Clause protects parents'

24    well-established liberty interest in the 'companionship, care, custody, and management of [their]

25    children.'" <u>James</u>, 606 F.3d at 651 (modification in original) (citing <u>Lassiter v. Dep't of Soc.</u>

26    <u>Servs.</u>, 452 U.S. 18, 27 (1981)).  Parents with no legal or physical custody, but merely visitation

1   rights, still have a liberty interest in the companionship, care, custody, and management of their

2   children.  Id. (citing  Brittain v. Hansen, 451 F.3d 982, 992 (9th Cir. 2006)).  However, "such a

3   parent's right is 'unambiguously lesser in magnitude than that of a parent with full legal

4   custody.'"  Id. (citing Brittain, 451 F.3d at 992).  The Ninth Circuit Court of Appeals has drawn

5   this distinction between the rights possessed by parents with physical custody of children and

6   parents with shared legal custody and only court-ordered visitation rights on the basis of "the

7   obvious reality that visitation is a lesser interest than legal custody."  Brittain, 451 F.3d at 992.

8              Here, there can be no dispute that plaintiff has some liberty interest in the

9   companionship, care, custody, and management of his daughters under the Fourteenth

10  Amendment.  However, even assuming that this liberty interest would support plaintiff's

11  substantive due process claims premised on the failures to schedule visitation and to provide the

12  identity of the daughters' therapist to plaintiff, such substantive due process rights were not

13  clearly established at the time of the alleged violations.  Accordingly, as discussed below, Scott

14  and Sheller are entitled to qualified immunity in regards to plaintiff's Fourteenth Amendment

15  substantive due process claims under the "clearly established" prong of the qualified immunity

16  test.

17             In regards to his claims that he has a substantive due process right to be both free

18  from interference with his visitation rights by Nevada County CPS's social workers and to obtain

19  the identity of his children's therapist's identity, plaintiff cites James v. Rowlands, 606 F.3d 646

20  (9th Cir. 2010), which addressed, in part, a non-custodial parent's substantive due process right

21  to be notified of certain information pertaining to a child abuse investigation involving that

22  parent's child.  In Rowlands, the Ninth Circuit Court of Appeals held that a parent with shared

23  legal custody, but no physical custody, has a Fourteenth Amendment right to: (1) notification, in

24  most instances, that a suspected child abuse victim has been taken into protective custody and

25  placed with another relative; and (2) notification "of a transfer in a minor's physical custody

26  when the officials have encouraged and facilitated the transfer," unless such notification would

put the child in imminent danger of serious bodily injury.  See id. at 653-55.  The Court of

Appeals also noted in James that "officials have a duty to notify parents when an abuse

investigation involves a medical exam," and, consistent with the Fourth Amendment, "must in

some circumstances notify parents when they detain a suspected child abuse victim."  See id. at

652 n.2.[12]

None of the Fourteenth Amendment rights established, or referred to, in James

provides plaintiff with a clearly established substantive due process right to assistance with

arranging visitation with his daughters.  Those rights relate to notification when a child is placed

in protective custody or when physical custody is transferred, and the basis for those notification

rights is a parent's right to an opportunity to seek physical custody of the child under such

circumstances.  See James, 606 F.3d at 654-55.  Although the Order of Protection here provides

for visitation supervised by Nevada County CPS under certain circumstances, James does not

provide plaintiff with a *constitutional* right to facilitated visitation.  And the undersigned has not

uncovered any other mandatory legal authority that even loosely provides such a constitutional

right grounded in substantive due process.  Accordingly, Scott and Sheller are entitled to

qualified immunity insofar as plaintiff's visitation-based substantive due process claim is

concerned.

Similarly, James does not establish or refer to a substantive due process right of a

parent with only shared legal, but non-physical, custody rights to notification of a child's

therapist's identity.  It is clearly established that "[t]he right to family association includes the

right of parents to make important medical decisions for their children, and of children to have

those decisions made by their parents rather than the state."  Wallis v. Spencer, 202 F.3d 1126,

---

[12]  The Court of Appeals specifically declined to resolve whether a parent with shared legal custody and no physical custody of a child has a Fourteenth Amendment right to: (a) notification of the existence of allegations of child molestation or a child molestation investigation, and (b) notification of attempts by a non-parent to coerce a suspected child abuse victim to alter her testimony.  See id. at 652-53.  The court held that these latter two asserted rights were not "clearly established" and that qualified immunity was thus appropriate.

1141 (9th Cir. 2000).  "Moreover, parents have a right arising from the liberty interest in family

association to be with [or at least, nearby] their children while they are receiving medical

attention."  Id. at 1142.  Similarly, "children have a corresponding right to the love, comfort, and

reassurance of their parents while they are undergoing medical procedures, including

examinations—particularly those . . . that are invasive or upsetting."  Id.; accord Greene v.

Camreta, 588 F.3d 1011, 1037 (9th Cir. 2009) (stating that "government officials cannot exclude

parents entirely from the location of their child's physical examination absent parental consent,

some legitimate basis for exclusion, or an emergency requiring immediate medical attention."),

vacated in part by Camreta v. Greene, No. 09-1454, slip op. (U.S. May 26, 2011).  However, as

Scott and Sheller note, these rights have been addressed in the context of intrusive, physical

examinations of children in connection with investigations, not therapeutic counseling.  See, e.g.,

Greene, 588 F.3d at 1036-37 (exclusion of parent from an examination room and a nearby

waiting area while child was visually and physically examined in connection with child abuse

investigation violated parent's clearly established constitutional rights); Wallis, 202 F.3d

at 1141-42 (children subjected to invasive vaginal and anal examinations at the behest of the

police department).  It is not clearly established that a parent with visitation rights but without

physical custody has a right to know the identity of a therapist who is treating his or her child,

and plaintiff cites no authority that establishes this proposed constitutional right.

   Based on plaintiff's failure to substantiate that Scott and Sheller should have

reasonably been aware of, and violated, plaintiff's clearly established constitutional rights, Scott

and Sheller are entitled to qualified immunity in regards to plaintiff's substantive due process

claims.  Accordingly, the undersigned recommends that plaintiff's second claim for relief be

dismissed with prejudice and defendants Scott and Sheller be dismissed from this action.

   D.  Renee's Anti-SLAPP Special Motion to Strike and Motion to Dismiss
     (Claims 3, 5, 6, and 9)

   Renee seeks to specially strike plaintiff's state law claims and dismiss plaintiff's

1    claim against her that is potentially premised on federal law.  Before turning to the merits of

2    Renee's motion, the undersigned briefly addresses Renee's request for judicial notice.

3                    1.      Renee's Request for Judicial Notice

4            Renee asks the court to take judicial notice of: (1) plaintiff's complaint, (2) an

5    Order of Appointment of Counsel for Child entered on August 5, 2008, in Nevada County

6    Superior Court Case No. FL05612 ("Order of Appointment"); (3) a Minor's Counsel Report filed

7    in the Superior Court's Case No. FL05612; and (4) a court hearing transcript prepared in

8    connection with the Superior Court's Case No. FL05612.

9            The complaint is already part of this court's file and, accordingly, the undersigned

10   need not grant Renee's request judicial notice of the complaint.  However, the undersigned does

11   grant Renee's request for judicial notice as to the Order of Appointment, which was filed in the

12   Superior Court and has a direct relation to the matters at issue.  See, e.g., Betker, 546 F.3d at 670

13   n.1; Bias, 508 F.3d at 1225; Cactus Corner, LLC, 346 F. Supp. 2d at 1092.  Because the court

14   need not review or rely on the Minor's Counsel Report or the hearing transcript to resolve

15   Renee's motions, the undersigned denies Renee's request for judicial notice as to those two

16   documents.

17                    2.      Renee's Anti-SLAPP Motion

18           Renee's anti-SLAPP motion is addressed to plaintiff's state law clams, which

19   encompass plaintiff's fifth, sixth, and ninth claims for relief.  Those claims seek relief for

20   intentional infliction of emotional distress, negligent infliction of emotional distress, and

21   "conspiracy to slander" under California law, respectively, and are the proper subjects of an anti-

22   SLAPP motion.  Plaintiff's third claim is somewhat ambiguous in that it alleges "fraud in

23   depriving plaintiff of his rights to a familial relationship"; it alleges acts of fraud and arguably a

24   violation of plaintiff's civil rights.  (See Compl. ¶ 16.)  Although it appears that the third claim is

25   one for fraud under California law, the undersigned broadly construes this claim, out of an

26   abundance of caution, as seeking relief pursuant to California law and 42 U.S.C. § 1983.

1  Therefore, only the state law fraud aspect of plaintiff's third claim for relief is the proper subject

2  of an anti-SLAPP motion.

3         With respect to the first step of the anti-SLAPP analysis, Renee has demonstrated

4  that plaintiff's state law claims arise from protected activity, i.e., the acts of which plaintiff

5  complains were taken in furtherance of Renee's right of petition or free speech under the United

6  States Constitution or the California Constitution in connection with a public issue.  See Cal.

7  Civ. Proc. Code § 425.16(b)(1); see also Jarrow Formulas, Inc., 31 Cal. 4th at 733, 74 P.3d

8  at 740.  Such protected activity expressly includes the following:

9          (1) any written or oral statement or writing made before a legislative,
           executive, or judicial proceeding, or any other official proceeding
10         authorized by law, (2) any written or oral statement or writing made in
           connection with an issue under consideration or review by a legislative,
11         executive, or judicial body, or any other official proceeding authorized by
           law, (3) any written or oral statement or writing made in a place open to
12         the public or a public forum in connection with an issue of public interest,
           or (4) any other conduct in furtherance of the exercise of the constitutional
13         right of petition or the constitutional right of free speech in connection
           with a public issue or an issue of public interest.

14

15  Cal. Civ. Proc. Code § 425.16(e).  The California Supreme Court has held that "[u]nder section

16  425.16, a defendant moving to strike a cause of action arising from a statement made before, or

17  in connection with an issue under consideration by, a legally authorized official proceeding need

18  not separately demonstrate that the statement concerned an issue of public significance."  Briggs

19  v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1123, 969 P.2d 564, 575 (1999); see

20  also Flatly v. Mauro, 39 Cal. 4th 299, 323, 139 P.3d 2, 17 (2006).

21         The allegations contained in plaintiff's complaint reflect that Renee's conduct of

22  which plaintiff complains relates solely to her legal representation of the minor children in

23  matters before the Superior Court.  Plaintiff's third, fifth, and sixth claims for relief are premised

24  on Renee's alleged legal arguments, representations, or misrepresentations to the Superior Court,

25  or Renee's alleged representations or misrepresentations to her clients regarding matters pending

26  before the Superior Court.  (See Compl. ¶¶ 11, 16, 18-19.)  Plaintiff's ninth claim for relief

25

1   alleges that Renee conspired to slander plaintiff by passing along a representation to the therapist

2   treating plaintiff's children in connection with the Superior Court proceedings. (See id. ¶ 22.)

3   California courts have held that claims against an attorney arising out of that attorney's

4   representation of his or her client are the proper subject of an anti-SLAPP special motion to

5   strike. See, e.g., Rusheen v. Cohen, 37 Cal. 4th 1048, 1056, 128 P.3d 713, 717-18 (2006) ("A

6   cause of action 'arising from' defendant's litigation activity may appropriately be the subject of a

7   section 425.16 motion to strike. . . . This includes qualifying acts committed by attorneys in

8   representing clients in litigation." (citations and quotation marks omitted).); Jarrow Formulas,

9   Inc., 31 Cal. 4th at 733, 74 P.3d at 740 (holding that a malicious prosecution claim arising form

10  attorney's representation of client was subject to anti-SLAPP statute); Zamos v. Stroud, 32 Cal.

11  4th 958, 965, 87 P.3d 802, 806 (2004) (same); Daniels v. Robbins, 182 Cal. App. 4th 204, 214-

12  15, 105 Cal. Rptr. 3d 683, 691 (Ct. App. 2010) (noting lack of dispute that attorney's oral and

13  written statements in prior judicial proceedings that gave rise to claims of malicious prosecution,

14  abuse of process, negligence, and intentional infliction of emotional distress were protected

15  activity under the anti-SLAPP statute); Cabral v. Martins, 177 Cal. App. 4th 471, 479-83, 99 Cal.

16  Rptr. 3d 394, 401-04 (Ct. App. 2009) (claims arising from attorney's revision of a will, lodging

17  of a will with the probate court, and representation of clients in judicial proceedings were subject

18  to anti-SLAPP motion); Dowling v. Zimmerman, 85 Cal. App. 4th 1400, 1418-20, 103 Cal. Rptr.

19  2d 174, 188-90 (Ct. App. 2001) (attorney's representation of clients in prior unlawful detainer

20  action that gave rise to plaintiff's claims of defamation, misrepresentation, and intentional and

21  negligent infliction of emotional distress against the attorney constituted protected activity).

22  Accordingly, Renee has met the threshold requirement in regards to her special motion to strike.[13]

23

24      [13] Plaintiff argues that the family law and custody proceedings in the Superior Court involve
    private matters and are thus outside of the scope of the anti-SLAPP statute's reach because those
25  proceedings do not involve public issues. This argument lacks merit in light of the definition of
    protected activity provided in California Code of Civil Procedure § 425.16(e) and the California
26  Supreme Court's decision in Briggs, 19 Cal. 4th at 1123, 969 P.2d at 575, which provides that "a

1    Because Renee has met her initial burden under the anti-SLAPP framework, the

2    burden would ordinarily shift to plaintiff to demonstrate a probability of prevailing on the merits,

3    i.e., that his complaint is "both legally sufficient and supported by a sufficient prima facie

4    showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is

5    credited." Kearny, 590 F.3d at 648.  Here, however, plaintiff is unable to make such a showing

6    as a matter of law because Renee's conduct, insofar as plaintiff's state law claims are concerned,

7    is protected by California's litigation privilege.

8    California's litigation privilege, found at California Civil Code § 47(b), provides,

9    in part, that a publication or broadcast made as part of a judicial proceeding is privileged. See

10   also Action Apartment Ass'n, Inc. v. City of Santa Monica, 41 Cal. 4th 1232, 1241, 163 P.3d 89,

11   95 (2007).  The California Supreme Court summarized this litigation privilege as follows:

12           This privilege is absolute in nature, applying to all publications,
             irrespective of their maliciousness.  The usual formulation is that the
13           privilege applies to any communication (1) made in judicial or
             quasi-judicial proceedings; (2) by litigants or other participants authorized
14           by law; (3) to achieve the objects of the litigation; and (4) that [has] some
             connection or logical relation to the action.  The privilege is not limited to
15           statements made during a trial or other proceedings, but may extend to
             steps taken prior thereto, or afterwards.

16

17   Id. (citations and internal quotation marks omitted, modification in original).  California's

18   highest court has given this privilege "a broad interpretation" in furtherance of the purpose of the

19   privilege, which is "to afford litigants and witnesses . . . the utmost freedom of access to the

20   courts without fear of being harassed subsequently by derivative tort actions."  Id.  Although the

21   privilege was originally enacted with reference to claims of defamation, "'the privilege is now

22   held applicable to any communication, whether or not it amounts to a publication . . . , and all

23   torts except malicious prosecution.'"  Rusheen, 37 Cal. 4th at 1057, 128 P.3d at 718 (quoting

24   _____

25   defendant moving to strike a cause of action arising from a statement made before, or in connection
     with an issue under consideration by, a legally authorized official proceeding need *not* separately
26   demonstrate that the statement concerned an issue of public significance."

1   Silberg v. Anderson, 50 Cal. 3d 205, 212, 786 P.2d 365 (1990)); see also Action Apartment

2   Ass'n, Inc., 41 Cal. 4th at 1241-42 (noting that the litigation privilege applies to claims of

3   slander, libel, and abuse of process, among other types of claims).  The privilege applies

4   "regardless whether the communication was made with malice or the intent to harm" and "does

5   not depend on the publisher's motives, morals, ethics or intent."  Kashian v. Harriman,98 Cal.

6   App. 4th 892, 913, 120 Cal. Rptr. 2d 576, 592 (Ct. App. 2002) (citation and quotation marks

7   omitted).  Moreover, "where the gravamen of the complaint is a privileged communication . . .

8   the privilege extends to necessarily related noncommunicative acts. . . ."  Rusheen, 37 Cal. 4th at

9   1062, 128 P.3d at 722.  "Any doubt as to whether the privilege applies is resolved in favor of

10  applying it."  Adams v. Superior Court, 2 Cal. App. 4th 521, 529, 3 Cal. Rptr. 2d 49, 53 (Ct.

11  App. 1992); accord Lambert v. Carneghi, 158 Cal. App. 4th 1120, 1138, 70 Cal. Rptr. 3d 626,

12  639 (Ct. App. 2008).

13          Here, plaintiff's claims of fraud, intentional infliction of emotional distress,

14  negligent infliction of emotional distress, and slander are tort claims covered by the litigation

15  privilege.  See Action Apartment Ass'n, Inc., 41 Cal. 4th at 1241-42 (noting that the litigation

16  privilege has been applied to claims of, among others, slander, intentional infliction of emotional

17  distress, and fraud); Walker v. Kiousis, 93 Cal. App. 4th 1432, 1440, 114 Cal. Rptr. 2d 69, 76

18  (Ct. App. 2001) (holding that the litigation privilege applies to claims of intentional and

19  negligent infliction of emotional distress).  And the allegations in plaintiff's complaint reflect

20  that all of plaintiff's state law claims alleged against Renee arise out of Renee's representation of

21  the minor children as court-appointed counsel in, or in connection with, court proceedings.  Thus,

22  Renee's actions are absolutely privileged.  As a result, plaintiff cannot demonstrate that he is

23  entitled to a favorable judgment on his state law claims against Renee.  Accordingly, the

24  undersigned recommends that all of plaintiff's state law claims against Renee be dismissed with

25

26

1    prejudice because Renee is absolutely immune under California's litigation privilege.[14]

2            3.     Renee's Motion to Dismiss Plaintiff's Section 1983 Claim

3            As discussed above, plaintiff's third claim for relief arguably alleges a claim that

4    Renee violated plaintiff's Fifth and Fourteenth Amendment rights, and implicates 42 U.S.C.

5    § 1983.  Recognizing this possibility, Renee moves to dismiss any Section 1983 claim potentially

6    alleged by plaintiff on the ground that Renee, as court-appointed counsel for the minors, was not

7    acting under color of state law.  Plaintiff does not substantively oppose this aspect of Renee's

8    motion.

9            Generally, with respect to individual defendants, "Section 1983 imposes civil

10   liability upon an individual who under color of state law subjects or causes, any citizen of the

11   United States to the deprivation of any rights, privileges or immunities secured by the

12   Constitution and laws."  Franklin v. Fox, 312 F.3d 423, 444 (9th Cir. 2002) (citing 42 U.S.C.

13   § 1983).  "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a

14   right secured by the Constitution or laws of the United States was violated, and (2) that the

15   alleged violation was committed by a person acting under the color of State law."  Long v.

16   County of L.A., 442 F.3d 1178, 1185 (9th Cir. 2006) (citing West v. Atkins, 487 U.S. 42, 48

17   (1988)); accord Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 624 (9th Cir. 1988) ("To make

18   out a cause of action under section 1983, plaintiffs must plead that (1) the defendants acting

19   under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal

20   statutes" (citation omitted).).

21           Here, plaintiff alleges in his third claim that Renee deprived him of his rights to

22   familial association, which plaintiff alleges elsewhere are provided by the Fifth and Fourteenth

23

24        [14]  Because the undersigned concludes that California's litigation privilege applies to all of
     plaintiff's state law claims against Renee, the court does not reach Renee's immunity argument
25   premised on the Noerr-Pennington doctrine.  Generally, "[u]nder the Noerr-Pennington doctrine,
     those who petition all departments of the government for redress are generally immune from
26   liability."  Empress LLC v. City & County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005).

1  Amendments to the United States Constitution.[15]  (Compl. ¶ 16.)  However, plaintiff has not

2  alleged that Renee was acting under color of state law, and cannot successfully amend his

3  complaint to remedy this pleading deficiency.

4         Renee is a private attorney and thus a private actor.  To determine whether a

5  private actor acts under color of state law, the court evaluates whether the alleged infringement of

6  federal rights is "fairly attributable" to the government even though committed by private actors.

7  Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003).  Insofar as the alleged constitutional

8  violations are concerned, Renee acted as court-appointed counsel for the minor children and

9  represented them in connection with court proceedings.  Such representation does not support an

10  allegation that Renee's acts were fairly attributable to the state such that she was acting under

11  color of state law.  See, cf., Polk County v. Dodson, 454 U.S. 312, 325 (1981) (holding that a

12  public defender does not act under color of state law when performing traditional functions as

13  counsel in a criminal proceeding); accord Miranda v. Clark County, Nev., 319 F.3d 465, 468 (9th

14  Cir. 2003) (en banc) (same); see also Kirtley, 326 F.3d at 1092-96 (holding that a private attorney

15  appointed by the state to represent a minor in court proceedings as guardian ad litem does not act

16  under color of state law for the purpose of a Section 1983 claim); Malachowski v. City of Keene,

17  787 F.2d 704, 710 (1st Cir. 1986) (per curiam) (holding that a private attorney appointed by court

18  to represent minor in state court juvenile delinquency proceedings does not act under color of

19  state law for the purpose of a Section 1983 claim), cert. denied, 479 U.S. 828 (1986); accord

20  Deluz v. Law Offices of Frederick S. Cohen, No. CIV S-10-0809 GEB DAD PS, 2011 WL

21  677914, at *4-5 (E.D. Cal. Feb. 17, 2011) (unpublished) (collecting cases and concluding that

22

23         [15] As with defendants Scott and Sheller, a claim against Renee premised on the Due Process
Clause of the Fifth Amendment is subject to dismissal.  As noted above, "[t]he Due Process Clause
24  of the Fifth Amendment . . . [applies] only to actions of the federal government—not to those of state
or local governments."  Lee, 250 F.3d at 687; accord Bingue, 512 F.3d at 1174; Castillo, 399 F.3d
25  at 1002 n.5.  Plaintiff has not alleged that Renee is a federal actor.  Moreover, plaintiff specifically
alleges that Renee was appointed by the Superior Court.  (Compl. ¶ 11; see also Order of
26  Appointment.)  Accordingly, plaintiff's third claim cannot proceed to the extent that it alleges a
violation of plaintiff's Fifth Amendment rights.

1   attorney appointed to represent minor in child custody proceedings did not act under color of

2   state law).  Insofar as her individual acts are concerned, Renee acted as private individual, not a

3   state actor.  Accordingly, the undersigned recommends that plaintiff's third claim for relief be

4   dismissed with prejudice to the extent that it alleges a claim under 42 U.S.C. § 1983.  Moreover,

5   for all of the reasons set forth above, the undersigned recommends that defendant Renee be

6   completely dismissed from this action.

7          E.       Judge McManus' Motion to Dismiss (Claim 1)

8                    Judge McManus moves to dismiss plaintiff's first claim for relief, which

9   encompasses numerous allegations of wrongdoing committed by Judge McManus in the Superior

10  Court proceedings.  Specifically, Judge McManus moves to dismiss plaintiff's claims on the

11  grounds that: (1) this court lacks jurisdiction over plaintiff's claims against her under the Rooker-

12  Feldman doctrine; (2) this court lacks jurisdiction under the domestic relations exception to

13  federal jurisdiction; (3) this court should abstain from hearing plaintiff's claims under the

14  abstention doctrine announced in Younger v. Harris, 401 U.S. 37 (1971); (4) on the merits,

15  Eleventh Amendment immunity bars all of plaintiff's claims against her; and (5) on the merits,

16  she is entitled to absolute judicial immunity.

17                   1.       The Rooker-Feldman Doctrine Does Not Currently Apply to this Action

18                   Judge McManus first argues that the Rooker-Feldman doctrine bars plaintiff's

19  claims.  In short, she argues that plaintiff is improperly attempting to either directly appeal the

20  Superior Court's rulings to this federal court or seek review of issues that are "inextricably

21  intertwined" with those rulings.  The undersigned concludes that the Rooker-Feldman doctrine

22  does not currently apply here.

23                   "Under Rooker-Feldman, a federal district court does not have subject matter

24  jurisdiction to hear a direct appeal from the final judgment of a state court."  Noel v. Hall, 341

25  F.3d 1148, 1154 (9th Cir. 2003).  The Supreme Court has stated that the Rooker-Feldman

26  doctrine occupies "narrow ground," Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011), and has

1    held that it is "confined to cases of the kind from which the doctrine acquired its name: cases

2    brought by state-court losers complaining of injuries caused by state-court judgments rendered

3    before the district court proceedings commenced and inviting district court review and rejection

4    of those judgments," Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284

5    (2005).[16]  "[W]hen a losing plaintiff in state court brings a suit in federal district court asserting

6    as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set

7    aside the judgment of that court, the federal suit is a forbidden de facto appeal." Noel, 341 F.3d

8    at 1156.  "Once a federal plaintiff seeks to bring a forbidden de facto appeal . . . , that federal

9    plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court

10   judicial decision from which the forbidden de facto appeal is brought." Id. at 1158.

11          As a fundamental matter, the Rooker-Feldman doctrine does not currently apply

12   here because there is no evidence that plaintiff is attempting to directly or indirectly appeal a

13   judgment of the Superior Court entered before plaintiff commenced this federal court action.  The

14   Supreme Court's most recent formulations of this narrow doctrine require that the appeal sought

15   by the "state-court loser" be of a state-court judgment rendered before the district court

16   proceedings commenced.  See Exxon Mobile Corp., 544 U.S. at 284; accord Skinner, 131 S. Ct.

17   at 1297.  Here, neither plaintiff's complaint nor Judge McManus' motion evidences a state court

18

19          [16]  In Noel v. Hall, the Ninth Circuit Court of Appeals provided the following "general
      formulation" of the Rooker-Feldman doctrine:

20                 If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision
                 by a state court, and seeks relief from a state court judgment based on that
21               decision, Rooker-Feldman bars subject matter jurisdiction in federal district
                 court.  If, on the other hand, a federal plaintiff asserts as a legal wrong an
22               allegedly illegal act or omission by an adverse party, Rooker-Feldman does
                 not bar jurisdiction.  If there is simultaneously pending federal and state court
23               litigation between the two parties dealing with the same or related issues, the
                 federal district court in some circumstances may abstain or stay proceedings;
24               or if there has been state court litigation that has already gone to judgment,
                 the federal suit may be claim-precluded under § 1738.  But in neither of these
25               circumstances does Rooker-Feldman bar jurisdiction.

26   Noel, 341 F.3d at 1164.

32

1   judgment that is the subject of any de facto appeal and, moreover, every indication from the

2   complaint and plaintiff's representations at the hearing is that the Superior Court proceedings are

3   not yet complete.  See H.C. ex. rel. Gordon v. Koppel, 203 F.3d 610, 612-13 (9th Cir. 2000)

4   (holding that the Rooker-Feldman doctrine did not bar claims where state court custody

5   proceedings were ongoing, no final state court judgment had been entered, and the Court of

6   Appeals was not asked to review a state judgment of an interlocutory nature).  Accordingly,

7   Rooker-Feldman does not apply.

8          Additionally, plaintiff represents in his written opposition that he is not asking this

9   court to review any judgment of the Superior Court that would be subject to review by the

10  California Court of Appeal.  (See Pl.'s Opp'n to Judge McManus' Mot. to Dismiss at 4 (stating

11  that "plaintiff does not seek in this action to affect any state court judgments or rulings, those

12  being the subject of appellate jurisdiction").)  Rather, he asserts that his "complaint puts into

13  issue the damages suffered by plaintiff as a proximate result of the actions of Defendant

14  McManus as an individual when she was acting in clear excess of jurisdiction."  (Id.)

15         Nevertheless, Judge McManus argues that "even though Plaintiff is not asking this

16  court to directly overrule the superior court, his claim for monetary damages is 'inextricably

17  intertwined' with [sic] underlying action and is barred by the Rooker-Feldman doctrine."  (Judge

18  McManus' Reply Br. at 3.)  However, the Rooker-Feldman doctrine's "inextricably intertwined"

19  rule does not apply when, as in this case, there has been no "de facto" appeal.  As summarized in

20  Noel:

21             The premise for the operation of the "inextricably intertwined" test in
                Feldman is that the federal plaintiff is seeking to bring a forbidden de facto
22             appeal.  The federal suit is not a forbidden de facto appeal because it is
                "inextricably intertwined" with something.  Rather, it is simply a
23             forbidden de facto appeal.  Only when there is already a forbidden de facto
                appeal in federal court does the "inextricably intertwined" test come into
24             play: Once a federal plaintiff seeks to bring a forbidden de facto appeal, as
                in Feldman, that federal plaintiff may not seek to litigate an issue that is
25             "inextricably intertwined" with the state court judicial decision from
                which the forbidden de facto appeal is brought.

26

1    Noel, 341 F.3d at 1158; accord Manufactured Home Cmtys. Inc. v. City of San Jose, 420 F.3d

2    1022, 1030 (9th Cir. 2005); Maldanado v. Harris, 370 F.3d 945, 950 (9th Cir. 2004).  Here, the

3    parties appear to agree that plaintiff's claims against Judge McManus do not constitute a de facto

4    appeal.  Accordingly, a condition precedent to application of the "inextricably intertwined" rule

5    is absent.  Therefore, for this additional reason, the Rooker-Feldman doctrine does not provide a

6    jurisdictional bar to plaintiff's claims against Judge McManus.

7                   2.      The Domestic Relations Exception Does Not Deprive This Court of
                           Jurisdiction Over Plaintiff's Claims
8

9                   In another jurisdiction-based argument, Judge McManus argues that the domestic

10   relations exception to federal jurisdiction bars plaintiff's claims against her because plaintiff's

11   claims pertain to decisions affecting the marital and custody relationships of plaintiff, Henzie,

12   and their two children.  The undersigned concludes that the domestic relations exception does not

13   apply in this action.

14                  As noted by the Ninth Circuit Court of Appeals, the "Supreme Court has long

15   recognized that, when the relief sought relates primarily to domestic relations, a doctrine referred

16   to as the domestic relations exception divests federal courts of jurisdiction."  Atwood v. Fort

17   Peck Tribal Court Assiniboine, 513 F.3d 943, 947 (9th Cir. 2008).  However, the Court of

18   Appeals has held that "the domestic relations exception applies only to the diversity jurisdiction

19   statute."  Id.

20                  Here, plaintiff's claims against Judge McManus are alleged pursuant to 42 U.S.C.

21   § 1983, and federal subject matter jurisdiction is premised on the court's federal question

22   jurisdiction provided in 28 U.S.C. § 1331.  Although plaintiff attempted to invoke the diversity

23   jurisdiction statute as to his claims against a single defendant, Roberts, the undersigned

24   concluded above that this court lacks diversity jurisdiction to hear any of plaintiff's claims.

25   Because this action is not, and cannot be, premised on diversity jurisdiction, the domestic

26   relations exception does not apply here.

                                                  34

3. <u>Younger Abstention Is Appropriate Here</u>

Judge McManus further argues that the court should abstain from hearing plaintiff's claims against her based on the abstention doctrine derived from the matter of <u>Younger v. Harris</u>, 401 U.S. 37 (1971). The undersigned recommends that the court abstain from hearing plaintiff's claims against Judge McManus.

Abstention under <u>Younger</u>, through which a federal court seeks to avoid interference with state court proceedings, "is a jurisprudential doctrine rooted in overlapping principles of equity, comity, and federalism." <u>San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose</u>, 546 F.3d 1087, 1091-92 (9th Cir. 2008) (footnote omitted). A federal court "must abstain under <u>Younger</u> if four requirements are met: (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that <u>Younger</u> disapproves." <u>Id.</u> at 1092 (citing <u>Gilbertson v. Albright</u>, 381 F.3d 965, 978 (9th Cir. 2004) (en banc)). <u>Younger</u> abstention applies not only where a federal action would interfere with a state criminal proceeding, but also "to federal cases that would interfere with state civil cases and state administrative proceedings." <u>Id.</u> (citing <u>Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.</u>, 477 U.S. 619, 627 (1986)). Abstention under <u>Younger</u> is the "exception rather than the rule." <u>Id.</u> (citing <u>AmerisourceBergen Corp. v. Roden</u>, 495 F.3d 1143, 1148 (9th Cir. 2007) ("[W]hen each of an abstention doctrine's requirements are not strictly met, the doctrine should not be applied.")).

Here, the allegations in plaintiff's complaint and plaintiff's representations at the hearing indicate that state court-initiated proceedings were ongoing at the time plaintiff filed his federal action and are still proceeding in the Superior Court. Accordingly, the first condition precedent to application of <u>Younger</u> abstention has been satisfied.

It is also beyond dispute that the divorce and custody proceedings in the Superior Court implicate important state interests, i.e., domestic and family relations. "'Family relations are a traditional area of state concern.'" Koppel, 203 F.3d at 613 (quoting Moore v. Sims, 442 U.S. 415 (1979)). Additionally, "a state has a vital interest in protecting 'the authority of the judicial system, so that its orders and judgments are not rendered nugatory.'" Id. (quoting Juidice v. Vail, 430 U.S. 327, 336 n.12 (1977)). As a result, the second requirement of the abstention doctrine has been met.

Next, neither plaintiff's complaint nor his representations at the hearing provides the court with any reason to believe that plaintiff would be barred from litigating his constitutional claims in the California state courts. Indeed, plaintiff noted at the hearing that he already pursued one appeal to the California Court of Appeal, although that appeal was dismissed on the grounds that plaintiff appealed a non-appealable order. See Berman v. Berman (In re Marriage of Berman), No. C062998, 2010 WL 4948488 (Cal. Ct. App. Dec. 7, 2010) (unpublished). Based on plaintiff's comments at the hearing, his concern appears to be that he will be unsuccessful in state court. That reason is not sufficient to preclude application of an otherwise appropriate abstention doctrine. Thus, the third Younger abstention requirement has been met.

Additionally, the final Younger abstention requirement favors abstention because plaintiff's federal court action would have the practical effect of enjoining the proceedings in the Superior Court. Plaintiff does not seek an express injunction that directs the hand of the Superior Court. However, plaintiff seeks damages and a declaration that Judge McManus violated plaintiff's civil rights, both of which would have the effect of effectively invalidating the decisions of the Superior Court and directing the future proceedings in that court. See Gilbertson, 381 F.3d at 977-80 (noting that the Supreme Court "extended Younger beyond injunctions to declaratory judgments because a declaration has the same practical effect on a state court proceeding as an injunction," and holding that Younger applies to damages actions). Based

1   on the foregoing, all of the requirements upon which application of <u>Younger</u> abstention is

2   conditioned are met in this case, and, accordingly, the undersigned recommends that the court

3   abstain from hearing plaintiff's claims against Judge McManus.

4   Should the district judge assigned to this case differ in his view of abstention in

5   this case, however, the undersigned addresses Judge McManus' remaining, merits-based

6   arguments below.  Although not framed conditionally, the discussion below addressing Judge

7   McManus' potential Eleventh Amendment immunity and absolute judicial immunity doctrine is

8   an alternative to abstention.

9       4.    <u>The Eleventh Amendment Bars Plaintiff's Damages Claims Against Judge McManus, But Only to the Extent that Those Claims Are Alleged Against Judge McManus In Her Official Capacity</u>

10  

11  Judge McManus argues that if the court reaches the merits of plaintiff's claims

12  against her, the immunity from suit provided in the Eleventh Amendment warrants the dismissal

13  of all of plaintiff's claims against her.  Although the undersigned agrees that Judge McManus is

14  entitled to Eleventh Amendment immunity, that immunity only reaches plaintiff's claims alleged

15  against Judge McManus in her official capacity.  Because plaintiff alleges his claims against

16  Judge McManus in her individual and personal capacities, the Eleventh Amendment is of limited

17  reach.

18  The Eleventh Amendment prohibits federal courts from hearing suits brought

19  against a state by its own citizens or citizens of other states.  <u>See</u> <u>Brooks v. Sulphur Springs</u>

20  <u>Valley Elec. Coop.</u>, 951 F.2d 1050, 1053 (9th Cir. 1991).  State officials sued for monetary

21  damages in their official capacities are not "persons" within the meaning of Section 1983 and,

22  therefore, are generally entitled to the Eleventh Amendment immunity because such a suit is

23  viewed as one against the state itself.  <u>Flint v. Dennison</u>, 488 F.3d 816, 824-25 (9th Cir. 2007);

24  <u>see also</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) ("Although state officials literally are persons, an

25  official-capacity suit against a state officer is not a suit against the official, but rather is a suit

26  against the official's office.  As such it is no different from a suit against the State itself" (citation

1    and quotation marks omitted).).  In addition, claims seeking relief premised solely on a state's

2    compliance with state law are barred by the Eleventh Amendment.  See Suever v. Connell, 439

3    F.3d 1142, 1148 (9th Cir. 2006).  However, Eleventh Amendment immunity for state officials

4    acting in their official capacities is limited to claims for damages and does not apply to a claim

5    for prospective injunctive relief to remedy ongoing violations of federal law.  See id.; Flint, 488

6    F.3d at 825 (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 n.10 (1989)).

7             Here, plaintiff has sued Judge McManus in "her individual and personal capacity"

8    (Compl. ¶ 4), and it is unclear whether he intended to sue Judge McManus in her official

9    capacity.  As a state official, Judge McManus is plainly immune from suit under the Eleventh

10   Amendment to the extent that plaintiff has alleged claims for damages against Judge McManus

11   in her official capacity.[17]

12            However, Judge McManus is not immune from suit to the extent that plaintiff

13   sued her in her individual or personal capacities.  The Supreme Court has held that "state

14   officials, sued in their individual capacities, are 'persons' within the meaning of § 1983."  Hafer,

15   502 U.S. at 31.  Thus, "the Eleventh Amendment does not erect a barrier against suits to impose

16   'individual and personal liability' on state officials under § 1983."  Id. at 30-31 (citation

17   omitted).  The Ninth Circuit Court of Appeals has held that to succeed on the merits of a claim

18   seeking to impose personal liability on a state official, "a plaintiff must show only that 'the

19   official, acting under color of state law, caused the deprivation of a federal right.'"  Suever v.

20   Connell, 579 F.3d 1047, 1061 (9th Cir. 2009) (citing Hafer, 502 U.S. at 25).  In such a case, "the

21   Eleventh Amendment is not implicated, because the claim is truly against the individual, not the

22   State."  Id.[18]

23

24            [17]   Plaintiff does not seek prospective injunctive relief insofar as Judge McManus is
      concerned.

25

26            [18]   Judge McManus argues that she is immune from liability under the Eleventh Amendment
      because, despite the manner in which plaintiff pled his claim, she was *acting* in her official capacity

                                              38

1    As noted above, plaintiff has sued Judge McManus in "her individual and

2  personal capacity." (Compl. ¶ 4.) Plaintiff's claims alleged against Judge McManus personally

3  or individually do not implicate Eleventh Amendment immunity. Accordingly, although the

4  undersigned concludes that Judge McManus is entitled to Eleventh Amendment immunity to the

5  extent that she has been sued for damages in her official capacity, she is not entitled to Eleventh

6  Amendment immunity to the extent that she has been sued in her personal or individual capacity.

7        5.    Judge McManus Is Entitled To Absolute Judicial Immunity As to Some of
              Her Alleged Actions

8

9    Finally, Judge McManus argues that if the court reaches the merits of the claims

10  against her, she is entitled to absolute judicial immunity. The undersigned agrees.

11    "Absolute immunity is generally accorded to judges and prosecutors functioning

12  in their official capacities." Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 922 (9th Cir. 2004)

13  (citing Stump v. Sparkman, 435 U.S. 349, 364 (1978); see also Simmons v. Sacramento County

14  Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim under § 1983

15  against the judge who entered the default, because the judge is absolutely immune for judicial

16  acts."). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of

17  damages." Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam). As a result, "judicial immunity

18  is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be

19  resolved without engaging in discovery and eventual trial." Id. "This immunity reflects the

20  long-standing 'general principle of the highest importance to the proper administration of justice

21  that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own

22  convictions, without apprehension of personal consequences to himself.'" Olsen, 363 F.3d

23  at 922 (citing Bradley v. Fisher, 13 Wall. 335, 347, 20 L. Ed. 646 (1871)).

24  _____

25  when plaintiff was allegedly injured. (See Judge McManus's Memo. of P. & A. In Supp. of Mot.
    to Dismiss at 9-10.) The Supreme Court squarely rejected this argument in Hafer, 502 U.S. at 27-28.
26  See also Suever, 579 F.3d at 1060-61.

1    There are two primary exceptions to the absolute judicial immunity: first, where

2  the judge's action is "not taken in the judge's judicial capacity"; and second, where the judge's

3  action, "though judicial in nature, is taken in the complete absence of all jurisdiction."[19]  See

4  Mireles, 502 U.S. at 11-12; accord Sadoski v. Mosley, 435 F.3d 1076, 1079 (9th Cir. 2006);

5  Meek v. County of Riverside, 183 F.3d 962, 965 (9th Cir. 1999).  As to the first exception to

6  judicial immunity, the Supreme Court has "made clear that whether an act by a judge is a

7  'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally

8  performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the

9  judge in his judicial capacity.'"  Mireles, 502 U.S. at 12 (citing Stump, 435 U.S. at 362) (internal

10  quotation marks omitted, modification in original).  The following are factors relevant to the

11  determination of whether a particular act is judicial in nature: "(1) the precise act is a normal

12  judicial function; (2) the events occurred in the judge's chambers; (3) the controversy centered

13  around a case then pending before the judge; and (4) the events at issue arose directly and

14  immediately out of a confrontation with the judge in his or her official capacity."  Ashelman, 793

15  F.2d at 1075-76; accord Duvall, 260 F.3d at 1133.

16    Regarding whether a judge performed a judicial act in the complete absence of

17  jurisdiction, the Supreme Court has held that "the scope of the judge's jurisdiction must be

18  construed broadly where the issue is the immunity of the judge," and that "[a] judge will not be

19  deprived of immunity because the action he took was in error, was done maliciously, or was in

20  excess of his authority."  Stump, 435 U.S. at 356.  In determining questions of judicial immunity,

21  courts distinguish "between acts 'in excess of jurisdiction' and acts 'in the clear absence of

22  jurisdiction' by looking to the subject-matter jurisdiction of the judge: '[a] clear absence of all

23

24    [19]  "[A]bsolute judicial immunity does not apply to non-judicial acts, i.e. the administrative,
legislative, and executive functions that judges may on occasion be assigned to perform."  Duvall
25  v. County of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001) (citing Forrester v. White, 484 U.S. 219,
227 (1988)).  Additionally, "judicial immunity is not a bar to prospective injunctive relief against
26  a judicial officer acting in her judicial capacity."  Pulliam v. Allen, 466 U.S. 522, 541-42 (1984).

1  jurisdiction means a clear lack of all subject matter jurisdiction.'" Miller v. Davis, 521 F.3d

2  1142, 1147 (9th Cir. 2008).

3          Here, the undersigned concludes that all of Judge McManus's acts at issue in

4  plaintiff's complaint were "judicial in nature."  Plaintiff alleges, in part, that Judge McManus:

5  "orchestrated a sham proceeding" in the family court; ordered that plaintiff and Henzie meet with

6  two Nevada County CPS social workers to discuss the potential placement of the children;

7  ordered that the children be placed in foster care, although plaintiff claims that the children were

8  never placed in foster care; informed Henzie's attorney that Henzie would be provided with an

9  attorney qualified to act in dependency actions upon request, and that he was denied such

10  counsel; lied in denying several statements in the family law case; used intimidation tactics and

11  threats of sanctions and incarceration in the course of the family law action; and signed orders

12  submitted by the parties that contained terms not addressed in any proceedings before the court

13  and/or failed to completely read orders that she signed.  (See Compl. ¶ 13.)  Additionally,

14  plaintiff alleges that Judge McManus "destroy[ed] evidence of an email communication by

15  plaintiff." (Id.)  At the hearing, plaintiff clarified that Judge McManus lost or deleted an emailed

16  proposed order from plaintiff that had also been served on other parties.  Plaintiff also alleges

17  that Judge McManus "communicat[ed] outside of court hearings in her individual capacity ex

18  parte with CPS and minors' counsel to orchestrate deprivation of plaintiff's familial rights

19  regarding his minor daughters" (id.); at the hearing, plaintiff clarified that those communications

20  were made to the CPS employees charged with administering visitation.  The acts alleged are

21  judicial in nature, the controversy centered on a case then pending before Judge McManus, and

22  the events at issue arose directly and immediately out of a confrontation with Judge McManus

23  while she was acting in her official capacity as a judge.  As to all of these acts, the undersigned

24  concludes that Judge McManus is entitled to absolute judicial immunity so long as the

25  jurisdictional exception to judicial immunity does not apply.

26          The undersigned further concludes that Judge McManus did not perform these

judicial acts in the complete absence of jurisdiction.  Plaintiff argues that Judge McManus acted

in the complete absence of all jurisdiction because, under the California Welfare and Institutions

Code, the "jurisdiction of minors described by Section 300 is under the jurisdiction of the

juvenile court."  In essence, plaintiff contends that Judge McManus improperly performed acts,

judicial or otherwise, reserved to the juvenile court.  See Cal. Welf. & Inst. Code §§ 245, 245.5

(describing the jurisdiction of the "juvenile court" over the care, supervision, custody, conduct,

maintenance, and support of the minor).  Judge McManus counters that the juvenile court is a

superior court entity exercising broad, original superior court jurisdiction.[20]  Regardless of the

precise interaction between the juvenile court and the broader superior courts under California

law, the undersigned concludes that based on plaintiff's allegations, Judge McManus, as a judge

of the Superior Court, at most acted in excess of her jurisdiction and not in the clear absence of

jurisdiction.  See Shucker v. Rockwood, 846 F.2d 1202, 1204 (9th Cir. 1988) (per curiam)

(holding that a judge whose misinterpretation of a statute allegedly led to the wrongful exercise

of jurisdiction was immune because he acted only in excess of his jurisdiction, but not in "the

clear absence of jurisdiction"), cert. denied, 488 U.S. 995 (1988).  Accordingly, Judge McManus

is entitled to absolute judicial immunity for all of the acts alleged by plaintiff.  Therefore,

---

[20] Judge McManus relies on the broad grant of original jurisdiction conferred to the superior courts of California in Article 6, Section 10 of the California Constitution:

> Sec. 10.  The Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings.  Those courts also have original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition.  The appellate division of the superior court has original jurisdiction in proceedings for extraordinary relief in the nature of mandamus, certiorari, and prohibition directed to the superior court in causes subject to its appellate jurisdiction.

> Superior courts have original jurisdiction in all other causes.

> The court may make any comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the cause.

1   whether under the <u>Younger</u> abstention doctrine or based upon absolute judicial immunity, the

2   undersigned recommends that Judge McManus be dismissed from this action.

3       F.      Roberts's Motion to Dismiss and Anti-SLAPP Special Motion to
                Strike (Claims 7, 8, and 9)
4

5           The three claims for relief alleged by plaintiff against Roberts are premised on

6   California state law.  Those claims are plaintiff's: (1) seventh claim for assault and battery;

7   (2) eighth claim for slander premised on Roberts's filing of a declaration in a bankruptcy court

8   proceeding, and conveying facts about the alleged fight between plaintiff and Roberts to Jeffrey

9   Guyton and defendants Eckerman and Renee; and (3) ninth claim for "conspiracy to slander" as a

10  result of Roberts's alleged conveyance of facts about the fight to Eckerman, who passed those

11  facts along to Henzie and Renee, who in turn passed those facts along to the minor children's

12  therapist.  (<u>See</u> Compl. ¶¶ 20-22.)  Roberts moves to dismiss plaintiff's claims against him for

13  lack of subject matter jurisdiction and for failure to state a claim on which relief can be granted.

14  He further moves to specially strike plaintiff's claims pursuant to California's anti-SLAPP

15  statute.

16              1.      Roberts's Request for Judicial Notice

17          Before turning to the merits of Roberts's motions, the undersigned addresses the

18  documents appended to Roberts's declaration as Exhibits A and B.  Roberts asks the court to take

19  judicial notice, or seeks incorporation by reference, of two documents: (1) Roberts's declaration

20  filed on July 29, 2010, in the matter of <u>In re Curtis Niccum and Elisa Niccum</u>, No. 2010-30995-

21  A-7 (E.D. Cal. Bankr.) (the "Bankruptcy Declaration"), which relates facts about the alleged

22  assault and battery and is referred to in plaintiff's complaint (<u>see</u> Roberts Decl., Ex. A; Compl.

23  ¶ 21); and (2) a partial set of civil minutes from the U.S. Bankruptcy Court for the Eastern

24  District of California regarding motions filed by Roberts on his clients' behalf in the bankruptcy

25  proceedings cited above, which refer to the fact that Roberts testified as an expert witness in

26  plaintiff's and Henzie's family law action (<u>id.</u>, Ex. B).  The undersigned grants Roberts's request

43

1   for judicial notice as to the Bankruptcy Declaration because it is part of another court's file that

2   bears directly on the plaintiff's claims in this action.  See, e.g., Reyn's Pasta Bella, LLC, 442

3   F.3d at 746 n.6; Shaw v. Hahn, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  The court may also

4   consider the Bankruptcy Declaration under the "incorporation by reference" doctrine because

5   plaintiff refers to the contents of that declaration in the complaint, and no party questions the

6   authenticity of that document.  See Knievel, 393 F.3d at 1076.  The court also grants Robert's

7   request for judicial notice as to the civil minutes from the unrelated bankruptcy action because it

8   is part of a court's file that bears directly on the plaintiff's claims in this action.  The court may

9   also consider these exhibits in resolving Roberts's Rule 12(b)(1) motion regardless of any request

10  for judicial notice or incorporation by reference.  See McCarthy, 850 F.2d at 560; Warren, 328

11  F.3d at 1139.

12          2.      The Court Should Decline To Exercise Supplemental Jurisdiction Over
                    Plaintiff's Claims Against Roberts
13

14          Roberts moves to dismiss the claims alleged against him, all of which are

15  premised on state law, on the grounds that diversity jurisdiction does not exist over these claims

16  pursuant to 28 U.S.C. § 1332, and supplemental jurisdiction does not exist over these claims

17  pursuant to 28 U.S.C. § 1367(a).  As to the issue of diversity jurisdiction, the undersigned

18  concluded above that the diversity statute does not provide this court with subject matter

19  jurisdiction over any of plaintiff's claims.  Accordingly, the court's subject matter jurisdiction

20  over plaintiff's state law claims must be premised, if at all, on 28 U.S.C. § 1367(a).

21          In regards to supplemental jurisdiction, 28 U.S.C. § 1367(a) provides, in relevant

22  part:

23          (a) Except as provided in subsections (b) and (c) or as expressly provided
            otherwise by Federal statute, in any civil action of which the district courts
24          have original jurisdiction, the district courts shall have supplemental
            jurisdiction over all other claims that are so related to claims in the action
25          within such original jurisdiction that they form part of the same case or
            controversy under Article III of the United States Constitution. . . .
26

The Ninth Circuit Court of Appeals has stated that "[d]istrict courts have discretion to hear

pendent state claims where there is a substantial federal claim arising out of a common nucleus

of operative fact."  Hoeck v. City of Portland, 57 F.3d 781, 785 (9th Cir. 1995).  The Supreme

Court has made clear that supplemental jurisdiction "is a doctrine of discretion, not of plaintiff's

right, and that district courts can decline to exercise jurisdiction over pendent claims for a

number of valid reasons."  See City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172

(1997) (citations and quotation marks omitted).[21]  Some valid reasons are expressly contained in

28 U.S.C. § 1367(c), which provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The Supreme Court has further "indicated that district courts [should] deal with cases involving

pendent claims in the manner that best serves the principles of economy, convenience, fairness,

and comity which underlie the pendent jurisdiction doctrine."  Int'l College of Surgeons, 522

U.S. at 172-73 (citation and quotation marks omitted, modification in original).

      The undersigned recommends that the court decline to exercise supplemental

jurisdiction over plaintiff's state law claims against Roberts.  As recommended in these findings

and recommendations, all of the claims over which this court has original jurisdiction, i.e.,

plaintiff's Section 1983 claims, should be dismissed either on the merits or as a result of an

---

[21]  Accord Voda v. Cordis Corp., 476 F.3d 887, 893, 897-98 (Fed. Cir. 2007); Groce v. Eli Lilly & Co., 193 F.3d 496, 500-01 (7th Cir. 1999); Royal Towing, Inc. v. City of Harvey, 350 F. Supp. 2d 750, 756 (N.D. Il. 2004).

abstention doctrine.  The one potential exception is plaintiff's fourth claim for relief against

Henzie, which alleges that Henzie committed "fraud" in depriving plaintiff of his constitutional

rights.  (See Compl. ¶ 17.)  However, as discussed below, the undersigned intends to recommend

the dismissal of that claim *sua sponte*, after providing plaintiff with an opportunity to file written

opposition to such dismissal.  Accordingly, it is appropriate for the district court to decline to

exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).  Moreover, declining the

exercise of supplemental jurisdiction over the three, purely state law claims serves the principles

of economy, convenience, fairness, and comity.  For the reasons stated above, the undersigned

recommends that the court not exercise supplemental jurisdiction over plaintiff's claims against

Roberts.

G.      *Sua Sponte* Dismissal of Plaintiff's Fourth Claim for Relief

Finally, the undersigned addresses plaintiff's fourth claim for relief, which

appears to allege a federal claim against defendant Mary Henzie pursuant to 42 U.S.C. § 1983.

As noted above, plaintiff's fourth claim arguably alleges a claim that Henzie violated plaintiff's

Fourteenth Amendment rights; it alleges that Henzie "fraudulently deprived [plaintiff] of his

constitutional right to a familial relationships with his daughters by making false accusations of

spousal abuse against plaintiff to his minor daughters and to Dr. Dugan, the court appointed

evaluator incident to a supplemental custody evaluation conducted in March 2009."  (Compl.

¶ 17.)  Thus, this claim arguably implicates 42 U.S.C. § 1983.

Because it plainly appears from the face of plaintiff's complaint that no

cognizable Section 1983 claim lies against Henzie, the undersigned is inclined to recommend *sua*

*sponte* that plaintiff's fourth claim for relief be dismissed.  As noted above, "[t]o state a claim

under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the

Constitution or laws of the United States was violated, and (2) that the alleged violation was

committed by a person acting under the color of State law."  Long, 442 F.3d at 1185.  Here,

plaintiff alleges a violation of one of his constitutional rights, but does not allege that Henzie

1  acted under color of state law.  Thus, this claim is subject to dismissal.  And given that Henzie is

2  by all accounts a private individual who is merely alleged to have given a statement to a court-

3  appointed "evaluator" in the context of divorce and custody proceedings of which she was a part,

4  plaintiff cannot cure the pleading deficiency if given leave to amend.  Accordingly, the

5  undersigned is inclined to recommend the dismissal of this claim with prejudice.

6          The court may dismiss plaintiff's claim *sua sponte* for failure to state a claim on

7  which relief can be granted if it grants plaintiff an opportunity to file a written opposition to such

8  dismissal.  See Lee, 250 F.3d at 683 n.7 (noting that a trial court may dismiss a claim *sua sponte*

9  for failure to state a claim if it gives notice of its intention to dismiss and affords the plaintiff an

10  opportunity to at least submit a written memorandum in opposition to such a motion) (citing

11  Omar v. Sea-Land Serv., Inc., 813 F.2d 986, 991 (9th Cir. 1987), and Wong v. Bell, 642 F.2d

12  359, 362 (9th Cir. 1981)); accord R.K., ex. rel. T.K. v. Hayward Unified Sch. Dist., No. C 06-

13  07836, 2007 WL 2778730, at *7 (N.D. Cal. Sept. 21, 2007) (unpublished) (raising the sufficiency

14  of a claim *sua sponte*, but permitting the parties to file supplemental briefs); Miller v. Davis, 420

15  F. Supp. 2d 1108, 1115 (C.D. Cal. 2006) (dismissing with prejudice claim asserted against party

16  who had been served but had not yet appeared in the action), aff'd by 521 F.3d 1142 (9th Cir.

17  2008), and 272 Fed. Appx. 628 (9th Cir. 2008), cert. denied, 129 S. Ct. 306 (2008).  Accordingly,

18  plaintiff is ordered to file a written opposition to the proposed dismissal of his fourth claim for

19  relief or a statement of non-opposition to the proposed dismissal.

20  IV.    CONCLUSION

21          For the reasons stated above, IT IS HEREBY ORDERED that:

22          1.     Defendant's Leslie Scott and Caroline Sheller's request for judicial notice

23  is granted.

24          2.     Defendant's Leane Renee's request for judicial notice is granted in part

25  and denied in part as moot.

26          3.     Defendant George A. Roberts's request for judicial notice and

47

1    incorporation of documents by reference is granted.

2           4.     *Within 21 days of the date of this order*, plaintiff shall file a written

3    opposition to the proposed *sua sponte* dismissal of his fourth claim for relief alleged against

4    defendant Mary Henzie.  If plaintiff does not oppose the dismissal of the fourth claim for relief,

5    he must file a statement of non-opposition to such dismissal.

6           It is FURTHER RECOMMENDED that:

7           1.     Defendants Leslie Scott and Caroline Sheller's motion to dismiss (Dkt.

8    No. 7) be granted, that plaintiff's second claim for relief be dismissed with prejudice as to Scott

9    and Sheller, and that Scott and Sheller be dismissed from this action with prejudice.

10          2.     Defendant Leane Renee's special motion to strike and motion to dismiss

11   (Dkt. No. 12) be granted, that all of plaintiff's claims alleged against Renee be dismissed with

12   prejudice, and that Renee be dismissed from this action with prejudice.

13          3.     Defendant Julie McManus' motion to dismiss (Dkt. No. 15) be granted,

14   and that the court abstain from hearing plaintiff's claims against Judge McManus or,

15   alternatively, dismiss those claims with prejudice, and that Judge McManus be dismissed from

16   this action.

17          4.     Defendant George A. Roberts's motion to dismiss (Dkt. No. 9) be granted

18   in part, and that the court decline to exercise supplemental jurisdiction over plaintiff's claims

19   against Roberts.

20   ////

21   ////

22   ////

23   ////

24   ////

25   ////

26   ////

1        These findings and recommendations are submitted to the United States District

2   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen

3   days after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b).

5   Such a document should be captioned "Objections to Magistrate Judge's Findings and

6   Recommendations."  Any response to the objections shall be filed with the court and served on

7   all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

8   Failure to file objections within the specified time may waive the right to appeal the District

9   Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d

10   1153, 1156-57 (9th Cir. 1991).

11        IT IS SO ORDERED AND RECOMMENDED.

12   DATED:  May 31, 2011

13

14

15                    KENDALL J. NEWMAN
                      UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26